UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 7 PROCEEDING |
| MICHAEL AND KELLY DONLEVY, ) | |
| Debtors. ) | |
| ) | CASE NO. 04 B 16320 |
| DAVID AND KAY LEFELSTEIN ) | |
| ) | ADVERSARY NO. 04 A 03135 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL DONLEVY, ) | |
| Defendant. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Adversary Proceeding relates to the joint Chapter 7 bankruptcy case of Michael and Kelly Donlevy.[1] The plaintiffs, David and Kay Lefelstein ("Plaintiffs") allege that pursuant to a construction contract between the Plaintiffs and the Defendant, the Defendant agreed to use funds given to him as a "material deposit" of $9,470 for payment to Chicago Granite and Marble, Inc. ("Chicago Granite"), an entity supplying materials on the job for that sum. Defendant, however, failed to use the funds paid to him by Plaintiffs for that purpose. Chicago Granite was not paid at all, and it placed a mechanic's lien on Plaintiffs' property in the amount of $10,985, which included charges related to the unpaid $9,470.

---

[1] The Adversary Complaint named both Debtors as defendants, however, pursuant to agreement by Plaintiff's counsel and on motion of this Court, Kelly Donlevy was dismissed from this Adversary Complaint without prejudice for failure to state any basis for relief or cause of action against her. (See Order, Jan. 24, 2005.) Therefore, only Michael Donlevy will hereinafter be referred to as "Defendant" or "Debtor."

Plaintiffs therefore filed this three-count Adversary Complaint. They assert that the failure of Defendant caused them damages in the amount of $10,985, and seek to bar dischargeability of that debt. Count I seeks to have Plaintiffs' claim found nondischargeable under 11 U.S.C. § 523(a)(2)(A) based on the assertion that Defendant obtained the $9,470 by fraud and false pretenses. Count II seeks to have Plaintiffs' claim found nondischargeable under 11 U.S.C. § 523(a)(4) based on the assertion that Defendant committed fraud or defalcation of the $9,470 while acting in a fiduciary capacity, embezzlement, or larceny. Count III seeks to have Plaintiffs' claim found nondischargeable under 11 U.S.C. § 523(a)(6) based on the assertion that Defendant willfully and maliciously injured the property of Plaintiffs.

Following trial, the Court now makes and enters the following Findings of Fact and Conclusions of Law. For reasons stated below and pursuant to a separate judgment order, judgment is separately entered in favor of Defendant on Counts I and III, but Plaintiffs' claim against the Defendant in the amount of $10,985 is found to be nondischargeable under Count II pursuant to 11 U.S.C. § 523(a)(4) and judgment will separately enter for Plaintiff on Count II.

## BACKGROUND AND PROCEDURAL HISTORY

Defendant is a contractor in the business of home remodeling. He does business as "Design Custom Woodworking" and/or "Design Custom Homes, Inc." Plaintiffs and Defendant entered into a contract on July 25, 2002 wherein the Defendant agreed to perform and furnish certain work, labor, and materials necessary for the remodeling of certain kitchen, bar, and lavatory countertops in Plaintiffs' house. Pursuant to the contract, Defendant agreed to provide all materials and labor to complete the project for $12,629. The contract required a "material deposit" of $9,470 for use to pay the granite supplier on this job, which Plaintiffs then provided

2

to Defendant. However, Defendant did not use those funds to pay Chicago Granite for the granite used in the Plaintiffs' home. Defendant later tendered three checks to Chicago Granite (supposedly drawn on funds from other sources to pay for the granite), but all were returned for insufficient funds. As a result, Chicago Granite placed a lien on Plaintiffs' property in the amount of $10,985, and they have the burden of paying off that lien.

## FINDINGS OF FACT[2]

1. The Defendants filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 26, 2004.

2. Prior to the filing of the instant bankruptcy petition, Plaintiffs filed suit against Defendant in the Circuit Court of the Sixteenth Judicial Circuit Kane County, Illinois.

3. A contract was entered into on July 25, 2002 between the Plaintiffs and Defendant whereby the Defendant agreed to provide certain remodeling services which were to include new granite material to be installed.

4. The total due under the contract for material and labor was to be $12,629.

5. The contract required a "material deposit" in the amount of $9,470. Defendant told Plaintiff Kay Lefelstein that Chicago Granite required the deposit of $9,470 to be paid in advance in order for Defendant to obtain delivery of material to use on the job at the Lefelstein home.

6. Plaintiff Kay Lefelstein wrote a check to Defendant for $9,470, check No. 9672 bearing the notation "granite."

---

[2] Findings of fact are based on pleadings and evidence presented at trial, and on facts deemed admitted based on Defendant's failure to respond to Plaintiffs' First Request For Admission of Facts within the time required by Fed.R.Civ.P. 36.

7. Defendant cashed check No. 9672 for $9,470 at the Harris Bank in St. Charles, Illinois on the same day said check was issued.

8. Defendant never used the $9,470 or any part of it to pay Chicago Granite. He used that money to pay other expenses of his business. He never paid Chicago Granite for the granite used in the Lefelstein home.

9. Defendant did tender three checks to Chicago Granite late in the year 2002, purportedly drawn on funds from other sources in order to pay the debt owed to it, but all were returned for insufficient funds. The copies of checks numbered 1098, 1093, and 1063 written and signed by Defendant attached to the Request for Admissions as Exhibit A are true and correct copies of those checks.

10. As a result of Defendant's failure to pay Chicago Granite, that company recorded a lien against Plaintiffs' property in the amount of $10,985, which included charges related to the granite cost. Pursuant to the contract between Plaintiffs and Defendant, it was Defendant's obligation to pay Chicago Granite, but he failed to do so.

11. A copy of the lien filed by Chicago Granite, attached to the Request for Admissions as Exhibit B, is a true and correct copy of the lien filed by Chicago Granite.

12. Defendant admitted that he has engaged in substantially similar conduct on other occasions, that is by providing for "material deposits" in his construction contracts, accepting such deposits but by failing to pay the suppliers for materials supplied.

13. Statements of fact contained in the Conclusions of Law shall constitute additional Findings of Fact.

## **CONCLUSIONS OF LAW**

### Jurisdiction

Jurisdiction over this matter lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a). Determination of the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409.

### Applicable Standards

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. In re Harasymiw, 895 F.2d 1170, 1172 (7th Cir.1990). The burden of proof required to establish an exception to discharge is a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); see also In re McFarland, 84 F.3d 943, 946 (7th Cir.), cert. denied, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." In re Scarlata, 979 F.2d 521, 524 (7th Cir.1992) (quoting In re Zarzynski, 771 F.2d 304, 306 (7th Cir.1985)).

### Count I - 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Section 523(a)(2)(A) excepts debts from discharge that are based on either intentional misrepresentation or fraud. McClellan v. Cantrell, 217 F.3d 890, 893-94 (7th Cir. 2000) Section

523(a)(2)(A) is not limited to false representations but includes actual fraud. Fraud has been defined as the following:

> [A] generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.
> McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000).

Alternatively, to establish a claim under § 523(a)(2)(A), a creditor must usually prove that (1) the debtor made a false representation of fact (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) the creditor justifiably relied on the false representation. In re Bero, 110 F.3d 462, 465 (7th Cir. 1997); Citibank (S. Dakota), N.A. v. Michel, 220 B.R. 603, 605 (N.D. Ill. 1998); Golant v. Care Comm, Inc., 216 B.R. 248, 253 (N.D. Ill. 1997).

Plaintiffs have not sustained their burden to prove by a preponderance of evidence that Defendant obtained the funds in issue by means of fraud, false pretenses, or a false representation.

Plaintiffs have established that they entered into a contract with the Defendant whereby the Defendant agreed to provide home remodeling services. (Pls. Ex. 1.) The contract stated the following:

> Design Custom Woodworking does hereby propose to provide all materials and labor to complete the project described above for the amount of **$12,629.00** and will require a material deposit of **$9,470.00** the entire balance to be due at time of completion of installation.

(Pls. Ex. 1.)

Plaintiffs have also established that they gave a check payable to the Defendant specified to be used to pay for the granite material to be used, but the Defendant did not use it for that purpose and ultimately was unable to pay Chicago Granite for the granite material used on the Plaintiffs' job.

Plaintiffs argue that the Defendant committed fraud by intending to use the funds advanced to him for his personal gain by using it to pay his business bills. (Compl. ¶ 15.) Although Defendant did admit to the practice of using payments from customers for "material deposits" on his jobs for general business needs, it was not proved the Defendant acted with the requisite intent to deceive when he accepted the check for material deposits.

In this case, Defendant did in fact attempt to pay the amount due for materials to Chicago Granite. Defendant tendered three checks to Chicago Granite in 2002, but all were returned for insufficient funds in the account when the checks were presented. Defendant's actions in attempting to pay Chicago Granite the full amount for the costs of the material demonstrate that he had some intent to pay for the granite out of his cash flow. Therefore, Plaintiffs have not demonstrated by a preponderance of evidence that Defendant acted with the requisite intent required to find a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### Count II - 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides that

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

7

11 U.S.C. § 523(a)(4). To prevail under § 523(a)(4), the Plaintiffs must prove that the Defendant committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. In order to establish that a debt is non-dischargeable for reason of defalcation while acting in a fiduciary capacity, the Plaintiffs must demonstrate by a preponderance of the evidence the existence of an express trust or fiduciary obligation, and a debt caused by the Defendant's defalcation while he was acting as a fiduciary. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d. 755 (1991); In re Woldman, 92 F.3d 546, 547 (7th Cir. 1996).

To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(4) a creditor must establish that: (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created. Klingman v. Levinson, 831 F.2d 1292, 1295 (7th Cir. 1987).

Therefore, a threshold inquiry is whether a fiduciary obligation exists between the Plaintiffs and the Defendant. In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look federal law. O'Shea v. Frain (In re Frain), 230 F.3d 1014, 1017 (7th Cir. 2000). However, state law is relevant to the inquiry. In re McDade, 282 B.R. 650, 659 (Bankr. N.D. Ill. 2002).

### Fiduciary Duty

To qualify as a fiduciary under § 523(a)(4), a fiduciary relationship must have an existence independent of the debtor's wrongdoing. In re Marchiando, 13 F.3d 1111, 1115-16 (7th Cir.), cert. denied, 512 U.S. 1205 (1994). The difference between a fiduciary relationship that imposes real duties in advance of the breach and the fiduciary relationship that does not

involves a difference in knowledge and power between the fiduciary and principal that gives the former a position of ascendancy over the latter Id. A Seventh Circuit panel has noted:

> The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one part to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

Id.

Pursuant to Illinois law, various relationships constitute fiduciary relationships: attorney and client; joint venturers or partners; corporate directors and shareholders; and trustee and beneficiary under an express trust. Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 702 (Bankr. N.D. Ill. 2002). Here, an express trust was established.

Under Illinois law, the requirements of a valid express trust are: (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by the circumstances which show that the settlor intended to create a trust; (2) a definite subject matter of trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee. In re Estate of Wilkening, 109 Ill. App. 3d 934, 940-41, 441 N.E.2d 158, 163 (1st Dis. 1982). If any of the above requirements are not described with certainty, an express trust is not created. Id.

In this case, the six requirements to establish an express trust are satisfied: (1) there was an intent to create a trust: evidenced by the contract between Defendant and the Plaintiffs wherein the Defendant was to use a "material deposit" given to him by the Plaintiffs to pay for

required materials; (2) a definite subject matter of trust property: the money Plaintiffs caused to be paid to the Defendant was specified to be used to pay for the material as required by the contract; (3) ascertainable beneficiaries: the Plaintiffs; (4) a trustee: the Defendant; (5) specifications of a trust purpose: Defendant was to pay Chicago Granite the funds for the job material; and (6) delivery of the trust property to the trustee: the check issued by the Plaintiffs was delivered to the Defendant, and was drawn on the bank account of Plaintiffs and paid.

Further, the Restatement (Second) of Trusts § 12 cmt. g (1959) supports such a ruling providing as follows:

> If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

In this case, it is clear that the Defendant did not have the unrestricted use of the funds to be obtained from the check for material deposits. Rather, he was required to keep the funds separate from his own and use them to pay a third party, Chicago Granite. Thus, a trust was created.

"It is immaterial whether or not the settlor knows that the intended relationship is called a trust, and whether or not he knows the precise characteristics of the relationship which is called a trust." Restatement (Second) of Trusts § 23 cmt. a (1959). Even though the contract between the Defendant and the Plaintiffs does not specifically describe the material deposit as trust property, it is clear from the actions of the parties and the contract that an express trust was created. The Defendant was entrusted with funds that were to be used only for the materials.

"A trustee owes a fiduciary duty to the beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degree of fidelity and utmost good faith." Dick v. Mid-Illinois Corp., 242 Ill. App. 3d 297, 304, 609 N.E.2d 997, 1003, 182 Ill. Dec. 463, 469 (1993). The Defendant, as trustee, owed the beneficiaries, the Plaintiffs, a fiduciary duty to carry out the terms of the trust according to the contract.

### Defalcation

Having determined that a fiduciary relationship existed between these parties, the next issue is whether a "defalcation" occurred. Defalcation is not defined in the Bankruptcy Code.

An objective standard is used to determine a defalcation, and intent or bad faith is not a requirement. Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 702 (Bankr. N.D. Ill. 2002). While the Seventh Circuit has not clearly defined defalcation within the context of § 523(a)(4), it has required something more than mere negligence or mistake, but less than fraud. Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994). One court has defined defalcation within the context of 11 U.S.C. § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." Nuchief Sales, Inc. v. Harper (In re Harper), 150 B.R. 416, 419 (Bankr. E.D. Tenn.1993).

In this case, the Defendant did not have the right to use the funds given to him by the Plaintiffs for any other purpose other than to pay for the granite materials. Defendant, however, testified that it was his typical practice to deposit checks given to him specifically for material deposits into a general business account. Defendant testified that it was not his usual practice to pay funds given to him for material deposits to the supplier, despite being entrusted with such funds for that purpose. Defendant misappropriated the funds from the "material deposit" check

11

when he used them for general business expenses and not for their designated purpose. Further, the Defendant has since failed to account for the funds.

Therefore, the Plaintiffs have proven by a preponderance of the evidence that Defendant defalcated while acting in a fiduciary capacity with respect to those funds. Accordingly, the amount of the mechanics lien placed on Plaintiffs property in the amount of $10,985 as a direct result of Defendant's defalcation while acting in a fiduciary capacity is found nondischargeable under § 523(a)(4).

### Count III - 11 U.S.C. § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). In order for a debt to be found nondischargeable under § 523(a)(6) the Plaintiffs must prove three elements by a preponderance of the evidence: (1) that the Debtor intended to and caused an injury; (2) that the Debtor's actions were willful; and (3) that the Debtor's actions were malicious. Rae v. Scarpello (In re Scarpello), 272 B.R. 691, 704 (Bankr. N.D. Ill. 2002) (multiple citations omitted).

For purposes of § 523(a)(6) "willful" means actual intent to cause injury, not merely the commission of an intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S. Ct. 974, 140 L .Ed. 2d 90 (1998). To satisfy the elements under § 523(a)(6) the Plaintiffs must plead and prove that the Defendant actually intended to harm them and not merely that the

Defendant acted intentionally and they were thus harmed. Id. at 61-62, 118 S. Ct. 974. The Defendant must have intended the consequences of his act. Id.

In this case, the evidence does not establish that Defendant intended to injure the Plaintiffs or their property or that he did willfully or maliciously injure Plaintiffs or their property.

## CONCLUSION

Plaintiffs satisfied their burden of establishing nondischargeability by proving that they paid Defendant $9,470.00 to be held in trust as a material deposit and that the defalcation by the Defendant occurred when he used these funds for his own purposes.

For the above-stated reasons, this Court finds that the debt owed by Defendant to the Plaintiffs for his failure to use funds entrusted to him for their proper purpose, as trustee of the funds to the Plaintiffs as beneficiaries, constitutes a defalcation under 11 U.S.C. § 523(a)(4), and thus is nondischargeable.

As a result of the defalcation by Defendant while acting in a fiduciary capacity, he caused damages of $10,985.00 to the Plaintiffs, and that debt is found nondischargeable in Count II under title 11 U.S.C. § 523(a)(4).

But judgment will enter for Defendant on Counts I and III.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 25th day of May 2006.

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on May 25, 2006, I caused to be mailed by United States first class mail copies of the foregoing FINDINGS OF FACT AND CONCLUSIONS OF LAW to the following:

Timothy P. Dwyer
Law Office of Timothy Dwyer
240 West River Drive
St. Charles, IL 60174
Counsel for Plaintiffs

Mr. Michael T. Donlevy
7N580 Wagontire Road
St. Charles, IL 60175
Defendant Pro Se

*Dorothy Clay*
Secretary/Deputy Clerk